**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Maureen Terri Angichiodo,<br><br>Plaintiff,<br><br>v.<br><br>Honeywell Pension and Savings Plan, and Salaried Employees Pension Plan of AlliedSignal, Inc., Plan Administrator of the Honeywell Pension and Savings Plan, Plan Administrator of Salaried Employees Pension Plan of AlliedSignal, Inc., and Honeywell International, Inc.,<br><br>Defendants. | No. CV-15-00097-PHX-NVW<br><br>**ORDER** |

Before the Court is Defendants' Motion for Summary Judgment. (Doc. 47.)

**I.    LEGAL STANDARD**

A motion for summary judgment tests whether the opposing party has sufficient evidence to merit a trial. Summary judgment should be granted if the evidence reveals no genuine dispute about any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). A material fact is one that might affect the outcome of the suit under the governing law, and a factual dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

The movant has the burden of showing the absence of genuine disputes of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). However, once the movant

shows an absence of evidence to support the nonmoving party's case, the burden shifts to the party resisting the motion. The party opposing summary judgment must then "set forth specific facts showing that there is a genuine issue for trial" and may not rest upon the pleadings. *Anderson*, 477 U.S. at 256. To carry this burden, the nonmoving party must do more than simply show there is "some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

In deciding a motion for summary judgment, the Court must view the evidence in the light most favorable to the nonmoving party, must not weigh the evidence or assess its credibility, and must draw all justifiable inferences in favor of the nonmoving party. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000); *Anderson*, 477 U.S. at 255. Where the record, taken as a whole, could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial. *Matsushita*, 475 U.S. at 587.

The Local Rules require that any party filing a motion for summary judgment file a statement, separate from the motion and memorandum of law, that sets forth each material fact on which the party relies in support of the motion. LRCiv. 56.1(a). "Each material fact in the separate statement must be set forth in a separately numbered paragraph and must refer to a specific admissible portion of the record where the fact finds support (for example, affidavit, deposition, discovery response, etc.)." *Id.* Only material facts should be included in the separate statement of facts; other undisputed facts that provide context may be included in the memorandum of law. *Id.*

Any party opposing a motion for summary judgment must file a separate controverting statement of facts that sets forth:

> (1) for each paragraph of the moving party's separate statement of facts, a correspondingly numbered paragraph indicating whether the party disputes the statement of fact set forth in that paragraph and a reference to the specific admissible portion of the record supporting the party's position if the fact is disputed; and (2) any additional facts that establish a genuine issue of material fact or otherwise

>preclude judgment in favor of the moving party. Each additional fact must be set forth in a separately numbered paragraph and must refer to a specific admissible portion of the record where the fact finds support.

LRCiv 56.1(b). The moving party may file a reply memorandum, but the Local Rules do not authorize filing a separate statement responding to the nonmoving party's controverting statement of facts. *See* LRCiv 56.1(d). If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact, the court may consider the fact undisputed for purposes of the motion. Fed. R. Civ. P. 56(e)(2).

## II.  UNDISPUTED MATERIAL FACTS

Defendants filed a separate statement of material facts in support of their motion for summary judgment. (Doc. 48.) Plaintiff did not respond to Defendants' statement of facts as required by the Local Rules, but instead filed a separate statement of facts and did not indicate that she disputes any of the facts set forth by Defendants. (Doc. 58.) In fact, some of the exhibits submitted by Plaintiff duplicate ones submitted by Defendants, and in her response to Defendants' motion Plaintiff does not dispute any of Defendants' facts or supporting exhibits. Therefore, the facts submitted by Defendants are considered undisputed for purposes of this motion. The facts submitted by Plaintiff are accepted as true to the extent they are consistent with the supporting exhibits.

### A.  The Retirement Plan

Plaintiff is the surviving spouse of Jerry Angichiodo. Mr. Angichiodo was a vested participant in Honeywell's defined benefit retirement plan, the Honeywell Retirement Earnings Plan ("Plan"), Supplement C, titled the "AlliedSignal Inc. Retirement Program (Provisions Relating to Employees at the Company's Signal Locations)" ("Signal Plan"). As explained in the Summary Plan Description, under the Signal Plan, the normal (*i.e.*, default) form of pension payment for a married participant who retires before death is the Qualified Joint and Survivor Annuity, which provides an amount equal to 50% of the pension payment the participant receives during his life to his surviving spouse after his death. When a married participant applies for retirement

benefits, he may elect a different pension payment option if he waives the Qualified Joint and Survivor Annuity option and his spouse provides written, notarized consent to the specific pension payment option he selects.

Alternative pension payment options include Single-Life Annuity, which provides the maximum monthly payment to a participant for as long as he lives, but it provides no benefits after his death.  The Survivor Annuity option provides reduced monthly payments to the participant during his life and, after his death, provides his spouse a monthly payment of 75% or 100% of the monthly payment the participant received during his life.  The amount the monthly payment is reduced depends on whether the 75% or 100% option is selected and the difference between the participant's age and his spouse's age.  A participant may designate someone other than his spouse to receive the survivor annuity if his spouse consents and certain age restrictions are satisfied.  Also, a participant may choose a 10-Year Certain & Life Annuity, which provides benefits for the participant's life and guarantees benefits for ten years; if the participant dies before receiving 120 monthly pension payments, the remaining payments are paid to the participant's beneficiary.  However, in exchange for the ten-year guarantee, the monthly pension payments are reduced by 5%.

The Summary Plan Description explains that when a participant applies for retirement, the Plan Administrator will verify the participant's right to a pension benefit under the Plan and will grant or deny the application.  If the application is granted, a detailed pension package will be sent to the participant, which includes a preliminary pension calculation and describes the procedure to follow to initiate pension payments, including electing pension payment options.  In order to begin receiving retirement benefits on a certain date, a participant must apply for retirement benefits not more than 90 or less than 45 days before that date and must elect a pension payment option no later than a given date.  The Summary Plan Description provides a chart showing the applicable deadlines for beginning to receive pension payments on January 1, February 1, March 1, etc.  For example, if a participant wants to begin receiving pension payments on

June 1, he must apply between March 1 and April 15 and elect a payment option by May 31. The Summary Plan Description does not provide any exceptions to the minimum 45-day period required for the verification and approval of a retirement application before commencement of benefits.

However, if a participant applies for retirement, elects one of the Joint and Survivor Annuity options, and dies before his retirement benefits commence, his election will apply to the survivor benefits paid to his spouse. The Summary Plan Description states:

> If you submit a valid election of a Joint and Survivor Annuity and you die before your [Benefit Commencement Date], survivor benefits will be paid to your Spouse in accordance with that election. . . . If you submit a valid election of any other form of payment available under the Signal Formula and you die before your [Benefit Commencement Date], that election will automatically be canceled, and survivor benefits will be paid to your Spouse as described in the *Section 6—Survivor Benefits*.

In *Section 6—Survivor Benefits*, the Summary Plan Description explains that if a participant dies while an active employee, his surviving spouse is eligible to receive a retirement benefit equal to 50% of the amount the participant would have received if he had terminated his employment with the company with a Single-Life Annuity payable at age 55, reduced using early retirement factors. If a participant dies after terminating his employment and he is eligible to receive a retirement benefit, but benefits have not commenced, his surviving spouse is eligible to receive a retirement benefit equal to 50% of the amount the participant would have received if he had retired on the day before he died with a Qualified Joint and Survivor Annuity reduced using factors based on his benefits eligibility at the time of termination of employment.

Section 6.02(a) of the Signal Plan provides that if a participant dies while an active employee, his surviving spouse is eligible to receive a monthly annuity payable for life equal to 50% of the benefit that would have been paid to the participant had he retired on the day before his death with a Single-Life Annuity, determined *without* reduction for early commencement. Because Section 6.02(a) is inconsistent with Section 6 of the

Summary Plan Description, the Plan Administrator advised Plaintiff that she would be provided the greater benefit determined under the two documents.

The Plan designates as the Plan Administrator Honeywell's Vice President, Human Resources, Compensation and Benefits. It designates the Plan Administrator and the Pension Investment Committee as the Plan's named fiduciaries. The Plan grants full discretionary authority to the Plan Administrator to determine eligibility for benefits and construe the Plan terms. The Plan Administrator may allocate administrative responsibility to others. Honeywell and the Plan Administrator have entered into an agreement with Hewitt Associates LLC pursuant to which Hewitt provides benefits administration services for the Plan, including recordkeeping services, telephone and website customer service, and the maintenance of the website accessible to Plan participants. The participant services provided by Hewitt for Plan participants and beneficiaries are referred to as the Honeywell Retirement Service Center. Honeywell instructs its supervisors and human resource generalists to direct any pension-related questions to the pension department or the Honeywell Retirement Service Center.

### B. Mr. Angichiodo

Mr. Angichiodo was employed by Honeywell and its predecessor companies beginning in August 1974. On multiple occasions, Mr. Angichiodo and Plaintiff were informed about retirement benefits, including pre-retirement survivor benefits. In 1985, Mr. Angichiodo and Plaintiff both signed an election form for a "spouse protection" retirement benefit, choosing the option that would provide a monthly pension to the surviving spouse equal to one-half of the participant's vested benefit if the participant died before retirement. In 2002, a year in which Mr. Angichiodo could have retired, the Plan Administrator advised Mr. Angichiodo that by continuing employment after his normal retirement age, he had decided to suspend payment of his retirement benefits until he actually retired and requested payments to begin.

In August 2012, Mr. Angichiodo sent an electronic message to the Honeywell Retirement Service Center, asking whether his beneficiary could receive any or all of his

retirement income if he died before retiring.  The Honeywell Retirement Service Center responded to Mr. Angichiodo that the Signal Plan provided pre-retirement death benefits that would provide his spouse a portion of his pension benefits if he died before beginning to receive pension payments and directed Mr. Angichiodo to a specific page on its website.  The page, which Mr. Angichiodo apparently accessed, printed, and saved, stated that if he was actively employed on his date of death, the death benefit would equal 50% of the Single Life Annuity as if he retired on the day before his death.  Mr. Angichiodo also printed a table showing the estimated amount of his Projected Retirement Benefit if he retired on that date.  The table listed pension payment options from which he could choose upon retirement, the estimated monthly payments these options would provide to him, and the estimated monthly payments these options would provide to his surviving spouse after his death.  The options included:  Single Life Annuity, 50% Joint and Survivor, 75% Joint and Survivor, 100% Joint and Survivor, and 10-Year Certain and Life.  Mr. Angichiodo had retrieved and saved similar projected pension benefit estimates in 2008.

Mr. Angichiodo was eligible to retire under the Signal Plan after his 65th birthday, but chose to continue employment.  In March 2013, Mr. Angichiodo became ill and began a medical leave, but he did not retire or complete the forms necessary to initiate retirement.  As Plaintiff reported, Mr. Angichiodo loved his job, and until the day he died, he hoped to return to work.  He remained employed until his death on April 10, 2013.

On April 12, 2013, Plaintiff notified the Honeywell Retirement Service Center of her husband's death.  She did not call or talk with anyone from the Honeywell Retirement Service Center or the Honeywell pension department in the period between her husband's cancer diagnosis and his death.

Because Mr. Angichiodo died before retiring or applying for retirement benefits, Plaintiff is entitled under the Signal Plan to the 50% survivor benefit that she is currently receiving.  If Mr. Angichiodo had completed the retirement process before his death and

had chosen the 100% Joint and Survivor pension payment option, Plaintiff could have been entitled to a monthly payment greater than the amount she is currently receiving.[1]

### C.     Procedure for Expediting Retirement Paperwork

In October 2013, Plaintiff filed a claim to receive monthly benefit payments equal to the survivor portion of the 100% Joint and Survivor Annuity.  In April 2014, Cynthia Robinson, a delegate of the Plan Administrator, denied the claim.  Among other things, Ms. Robinson's letter stated:  "The Plan and the Service Center have procedures in place to help participants with severe illnesses receive information about their retirement benefits and complete the retirement paperwork as quickly as possible if they wish to retire.  Neither the Plan nor the Service Center has any record that Mr. Angichiodo's medical condition was brought to their attention before he died."

In May 2014, Plaintiff spoke with a call center representative of the Honeywell Retirement Service Center, who incorrectly said that an employee's supervisor or human resources representative could initiate the retirement of a terminally ill employee or take other steps to ensure that a terminally ill employee retired before his death.

In July 2014, Plaintiff was told in a letter from Christopher Gregg, on behalf of the Honeywell Pension and Savings Plan Appeals Committee:

> As stated before, the Plan has a process to help terminally ill employees understand their pension benefits and quickly make elections if that is what they wish to do.  However, the process cannot be started if the Plan or its representatives do not receive information about the participant.  In this case, no one contacted the Honeywell Retirement Service Center until after Mr. Angichiodo's death on April 12, 2013.

Thus, Plan representatives stated they assist terminally ill employees to complete their retirement paperwork.  They did not say there was a procedure to reduce the 45-day minimum period between applying for retirement and commencing retirement benefits. There is no evidence before the Court showing that the Plan permits a terminally ill employee to retire immediately, the retirement process will be expedited for a terminally

---

[1] The parties have not identified the amount Plaintiff currently is receiving or the amount she seeks to be paid.

- 8 -

ill employee, or the retirement process will be initiated on behalf of an employee who has not decided to retire. The Plan's process for facilitating an employee's completion of retirement paperwork is not an "expedited retirement process."

**III.   ANALYSIS**

Plaintiff's Amended Complaint included two counts; the first count was resolved administratively and dismissed as moot. (Docs. 50-53.) The second count alleges breach of fiduciary duty against "Defendants" generally, but refers to "Plan Fiduciaries" and duties defined in 29 U.S.C. § 1104(a)(1), apparently seeking relief under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 et seq. (Doc. 5.) The Amended Complaint identifies the following parties as Defendants: the Honeywell Pension and Savings Plan, the Salaried Employees Pension Plan of AlliedSignal, Inc., the Plan Administrator of the Honeywell Pension and Savings Plan, the Plan Administrator of the Salaried Employees Pension Plan of AlliedSignal, Inc., and Honeywell International, Inc. (*Id.*) It is not clear which Defendants Plaintiff alleges are "Plan Fiduciaries."

The Amended Complaint alleges that because Mr. Angichiodo was an active employee at the time of his death, Plaintiff was entitled to a survivor benefit of much less than the amount that she would have received if Mr. Angichiodo had retired and selected an option for 100% survivor benefits. The Amended Complaint alleges that Defendants breached their fiduciary duties to Plaintiff by "concealing the process of retiring a terminally ill employee in order to permit the employee to make an appropriate pension election," "failing to properly train human resource employees and managers about the proper procedures to follow when an employee becomes terminally ill," "failing to provide [Plaintiff] with proper explanation of benefits," "misrepresenting facts during the appeal process," "concealing information regarding the process from [Plaintiff]," and "acting in their financial self-interest." (*Id.* at 8.)

In her Response to Defendants' Motion for Summary Judgment, Plaintiff asserts that she brings a claim for breach of ERISA-imposed fiduciary duties, seeking "other

appropriate equitable relief" under 29 U.S.C. § 1132(a)(3) to redress breaches of fiduciary duty by Plan Fiduciaries. (Doc. 57 at 8.) Section 1132(a)(3) provides that a civil action may be brought "by a participant, beneficiary, or fiduciary (A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan." To establish an action for equitable relief under § 1132(a)(3), the defendant must be an ERISA fiduciary acting in its fiduciary capacity and must violate ERISA-imposed fiduciary obligations. *Paulsen v. CNF Inc.*, 559 F.3d 1061, 1075 (9th Cir. 2009). The term "equitable relief" in § 1132(a)(3) means relief that was typically available in equity and excludes "make-whole monetary relief." *Id.* at 1076.

In her Response to Defendants' Motion for Summary Judgment, Plaintiff states that "the Plan Administrator and the Pension Investment Committee, both named fiduciaries, breached their duties by concealing the process used to expeditiously retire terminally ill employees and failing to adequately describe that process in the plan documents." (Doc. 57 at 2.) She also states that the Plan Fiduciaries breached their duty to provide complete and accurate information regarding the Plan's "process that assists terminally ill employees to immediately retire, so that the employee can actually elect a pension option, rather than being stuck with the plan default." (Doc. 57 at 3.) She contends that the process was not disclosed, someone should have advised her and Mr. Angichiodo that it existed, and she does not know who is a fiduciary.[2] (*Id.* at 6-7.) She further contends that the Plan Administrator breached its fiduciary duties by failing to disclose the expedited retirement process in the Summary Plan Description. (*Id.* at 7.)

---

[2] Under ERISA, "a person is a fiduciary with respect to a plan to the extent (i) he exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets, (ii) he renders investment advice for a fee or other compensation, direct or indirect, with respect to any moneys or other property of such plan, or has any authority or responsibility to do so, or (iii) he has any discretionary authority or discretionary responsibility in the administration of such plan." 29 U.S.C. § 1002(21)(A).

Although Plaintiff previously contended that Mr. Angichiodo's supervisor and/or co-worker in human resources who knew of his cancer diagnosis should have reported his illness to the Honeywell Retirement Service Center or to a Honeywell employee with pension responsibilities to initiate the retirement application process, she does not argue that the supervisor and/or co-worker had ERISA fiduciary duties. Now she contends that "someone" should have told Mr. Angichiodo and her about the undisclosed process and the Plan Administrator should have disclosed the process in the Summary Plan Description.

Assuming the Plan Administrator owed Mr. Angichiodo and Plaintiff a fiduciary duty to provide complete and accurate information regarding retirement benefits and the process for obtaining them, there is no evidence the Plan Administrator breached that duty. The Plan and the Honeywell Retirement Service Center had procedures to assist participants with severe illnesses to complete their applications for retirement benefits as quickly as possible. They did not have a procedure, or the authority, to terminate a participant's employment or complete a participant's application for retirement benefits on behalf of a participant. They did not have a procedure that would enable a participant to obtain retirement benefits "immediately" or that would expedite the time required for verification and approval of the retirement application. Plaintiff's claim for breach of fiduciary duty rests on her incorrect belief that such a procedure existed and was not disclosed in the information provided to Mr. Angichiodo and her. The Plan Administrator had no duty to disclose a procedure that did not exist.

Moreover, Plaintiff contends that the "equitable relief" she seeks under 29 U.S.C. § 1132(a)(3) is a "surcharge" in an amount equivalent to the monetary benefit she would have received under the Plan, but for the Plan Administrator's breach of fiduciary duty. (Doc. 57 at 8-9.) "Make-whole monetary relief" is not available under § 1132(a)(3). *Paulsen*, 559 F.3d at 1076. Plaintiff does not seek relief that can be awarded under § 1132(a)(3).

IT IS THEREFORE ORDERED that Defendants' Motion for Summary Judgment (Doc. 47) is granted.

IT IS FURTHER ORDERED that the Clerk enter judgment in favor of Defendants and against Plaintiff and that Plaintiff takes nothing. The Clerk shall terminate this case.

Dated this 9th day of December, 2016.

Neil V. Wake
Senior United States District Judge